United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. This is Judge Wilson in Tampa. Judge Rosenbaum is in Fort Lauderdale and Judge Hull is in Atlanta and we have three appeals that are scheduled for oral argument this morning. We appreciate your cooperation counsel in scheduling these arguments for this morning. Ms. Tisa is the courtroom deputy and she will as the timekeeper and she will let you know when your time to argue has expired and she will also provide you a two-minute warning when your time to argue is about to expire. So it looks like we're ready for the first argument. Counsel, I would advise you that we've read the briefs and in some instances we've examined the record. We've reviewed the record. If that will assist you in narrowing your arguments for the limited time that you have available this morning. So we will proceed with the first argument. It's the United States of America v. Francisco Arcelia Ramirez. Anna Davidi is here for Ramirez and Randy Hummel is here for government and Ms. Davidi you may begin. Good morning judges. My name is Anna Davidi and I represent the appellate Arcelia Ramirez in this matter. First and foremost I'd like the court to bring the court's attention to what happened in this case. Mr. Arcelia pled under statute USC 2339 BA1 to providing material support to a terrorist organization and we agree that the facts that constituted that offense Mr. Arcelia knew that the ELN was a terrorist organization. He pled guilty to that offense. Subsequent to that the PSI was prepared and a hearing a sentencing hearing was conducted. At the sentencing hearing the defense objected to the enhancement under 3A1.4 which is the terrorist enhancement. Now I want to take the court slowly into how that is done. Our position is that the lower court misconstrued the application of the enhancement and what was enhancement. First and foremost it's important to note the extraordinary penalty that comes along with this enhancement. Courts have in the past said this enhancement should apply only to our most dangerous terrorists. Because of this it resembles very closely to our career offender statute here. What happens basically is that a defendant wait we understand it's a serious I promise you we understand how serious this is makes a material difference. Basically what the district court did he conflated erroneously the intent that you have to show for the conviction with the enhancement without recognizing and I guess because our circuit hadn't said so that there's a separate intent. Would that be a fair way to summarize what happened? Yes ma'am absolutely. He was confused he said certainly you've got intent you know it's the ELN you the statute requires you know that you as far as you know it's a terrorist activity and so he just conflated that intent with what the statute with the guideline says but other courts have said the guideline requires defines a federal crime of terrorism as offense that is calculated to influence or affect the government and so forth and he missed the district court missed that there's a separate intent. Is that correct? Yes ma'am absolutely. And he made no fact finding anyway to begin with of any kind of intent. He did not judge. Okay go ahead. Well now Miss Miss DeVete didn't Judge Martinez focus on the fact that Ramirez sold firearms you know that they're weapons that are inherently violent and of course they'll be used by a terrorist organization with a specific intent to influence the government. Why can't the judge reasonably infer that Ramirez's conduct demonstrates a specific intent to influence or affect the conduct of the government just by nature of the fact that he sold firearms that are inherently violent. Of course you're going to use firearms to influence or affect the conduct of the government. Can't the court reasonably infer specific intent based on those circumstances? No sir we don't believe they can because what is happening is that the courts have held most specifically in the current case that we cited in our reply brief which is U.S. v. Alhagy which is specifically a ninth circuit court of appeals and in that case the court goes to great analysis of what must be proven. It specifically says that the characteristics or the elements of the crime that the defendant pleads to are separate and distinct from the prongs that need to be proven to get this extraordinary enhancement. The facts of this case is simple. Mr. Arcila is approached by a confidential source. The confidential source brings him to a meeting with a broker who among his clients sells guns to the ELN. So we are three steps removed from the ELN. The conversations that the government had, the meetings the government had, nothing indicated that Mr. Arcila's specific intent had anything to do with the ELN organization, the ELN goals, nothing to do with the government at all and what I did judge is I defined because there's a lot of there's a lot of confusion I believe as to intent and motive and what I did was I looked at Webster's dictionary and intent more is what your purpose is, what was his aim, what was his clearly formulated intent. There is no doubt that Mr. Arcila's intent was to sell illegal weapons. The government concedes that he was a broker. He sold to all sorts of bad people. There is nothing at all that specifically indicates that he had any sort of attachment, any sort of interest in the government, nothing at all and I think that extra step is what makes it so badly applied in this case. But he knew what the ELN did. He knew that was the purpose of the government. I mean that's of course the government. He's admitted he knew they were engaged in terrorist activity. Absolutely. To me the problem is we don't have the fact finding here by the district court one way or the other. I just don't have a fact finding. Right and what judge I think that the court would find if they did a fact finding is that yes he knew what the ELN did and what the courts have said is once you plead to a terrorist charge you have to admit you know what the terrorists did. I mean you know they're a bad organization. If not you wouldn't have that component of the element of the underlying offense but they have to go one step further and say that it must have some sort of direct correlation with the government. Had there been some sort of statement, some sort of indication that Arsila Kher knew that this was going to affect the government then the argument would be substantially different. Counsel, I'm sorry to interrupt but I mean I think that he admitted that he knows that ELN does in fact advocate, is a guerrilla organization. Those were his words I think but and maybe I'm misunderstanding this. I was under the impression that in addition to anti-government type action ELN also engages in things like drug tying him to like if all ELN did was involve itself in guerrilla action then I think this would be a much harder case. The problem is ELN also engages in other illegal activity. I don't know if you want to address that. Yes ma'am and you're absolutely correct and that was my next point I was going to bring up. The ELN besides their terrorist qualifications or criteria also involve themselves in drug trafficking. They involve themselves in inner war with the frack. They are an organization for lack of a better word that's involved in all sorts of activities. They're not like if I would say maybe ISIS that their only activity is terrorism even though the court in Al-Ghazi goes to great length to demonstrate why Mr. Al-Haghi was should not receive this enhancement and I think it's very important that we. Yeah but Al-Haghi all he does was he was helping them post stuff on the media. There were no firearms there. There were no bombs. There was nothing. Al-Haghi the total conduct was helping other people media posts right. Well I believe that he is promoting. Yes or no if it was all about social media posts. He was helping them on the internet do social media posts right. Right promoting their cause which is not a good cause promoting terrorism or promoting ISIS views. And you had a fact finding in Al-Haghi. Absolutely judge and specifically that's what the courts have held. They need to go through several steps. They can't just jump to the conclusion which is what the lower court did. It jumped to the conclusion that this enhancement applied without taking the steps necessary to determine that the first prong of this enhancement applied specifically to Mr. Arsila Ramirez's actions. Would you agree that if if all ELN did was terrorist activity that his admission that he knew that ELN was involved in guerrilla warfare and that he sold firearms to ELN would be enough for this enhancement to apply? I still believe that it's true fact find your elements but to be proven to show under the first prong of this enhancement that somehow that affected the government that he did this in order to intimidate the government to go one step further. I think what else could it be though? I mean what else what else could it be if he knows for a fact that all an organization does is terrorism and he's supplying them with the actual physical tools to engage in that terrorist activity. Well I still think there needs to be some sort of nexus to show that somehow his specific actions influenced or affected the conduct of the government. Keep in mind that any this organization specifically they protect themselves against other guerrilla organizations in this area which is to and I think we're very far removed on the nexus and anything at all to show intimidation or coercion against the government. None of Mr. Arcillo Ramirez's actions indicate he cared he knew or he was involved at all in the goals of this organization and I think that's why you need that nexus. All right thank you counsel you've reserved some time for rebuttal and we'll hear from Mr. Hummel on behalf of the government. Thank you very much. Good morning members of the court Randy Hummel senior litigation counsel on behalf of the United States. I'd like to start with discussing what was happening at the sentencing hearing in this case because I think it's clear when you look at the record as a whole that the parties and the district court were on the same page about what is the governing legal framework that there was no dispute about the rules for applying the enhancement in this case as was articulated not only in terms of the arguments that were made orally to the district court but in the extensive briefing that preceded the actual sentencing hearing. You know you have a very lengthy set of objections to the PSI that were made by the appellant and you had a very significant response filed by the government discussing in both those pleadings in depth the application or non-application of the 3A 1.4 enhancement. Mr. Hummel where do we find the findings of fact by the government? Where do we find those findings of fact in the record that would establish a by the sale of these weapons to the terrorist organization? Your honor as I indicated in the brief that we filed on behalf of the government there was extensive argument back and forth on the enhancement. There was a lengthy discussion about the Second Circuit Awan case which is very germane to this case and the statements made in that case about when the 3A 1.4 enhancement is appropriate and when the criteria for that is met and the judge only made a ruling as to the overruling the objection that was made by appellant to the application of that enhancement after there was a full discussion of that after the government pointed out to the court how the defendant's actions and the appellant's actions in this case were on all fours with the analogy made in the Awan case about the hired assassin who could care less politically about the aims and the goals of the organization but nonetheless by killing an object of that terrorist organization's ire in the government helps to succeed helps them to succeed in their goals and it was only at that point Judge Wilson that then the district court said I'm going to over here and that is if ELN only were involved in terrorist activity I think that would be a very strong argument because the only thing an assassin does is kill someone right I mean there's and there's no question that by killing the person that person that's going to have an effect on the which is not great either but for example drug trafficking drug trafficking is a separate type of activity criminal activity than terrorism and so doesn't the court have to make and take another step and find that it was his intent his specific intent that the guns be used for the terrorism as to ELN's other activities for which they would use guns. Judge Rosenbaum I would respond to that by saying you can't separate out what ELN does with narcotics trafficking with their terrorist aims quite frankly and government exhibit 21 talks about this in some detail let's say department of at the sentencing hearing ELN is a terrorist organization they are self-funded by drug trafficking drug trafficking is part of their modus operandi to continue their aim to overthrow the Colombian government so to say it's a separate item from what their terrorist aims are I would have to dispute that I would say that in fact it is completely in keeping with their goals as a weaponry that they did in this case from the from the appellant so it is part and parcel of their aims their goals their ability to carry out the terrorist aims that they wish to carry out against the Colombian government. Mr. Hummel, Mr. Ramirez sells he's a firearms broker he sells to organizations other than terrorist organizations was that taken into consideration um by the district court? Your honor I um I don't know that there is something I can point to explicitly in the sentencing hearing record on that score. Yeah I think Ms. DeVita said that during her um her initial argument but was there um some evidence of that at the evidence you're hearing that he's a gun broker he sells to lots of other organizations as well? I think there was an argument by Ms. DeVita that was made uh during the course of the sentencing hearing I don't know the specific location of the transcript where that may have been said but the fact of the matter is that you had a factual proffer that he agreed to uh where you know he is talking in the factual proffer about the meeting that he has with the ELN broker and is that where he says I know they're a guerrilla organization? No that actually judge has said in government exhibit 19 and also in the PSI there's a substantial portion if you look at the record of this case there's a substantial portion but when is the guerrilla statement made that he knows it's a guerrilla group? Uh that is made in his post arrest statement uh to uh the interviewing FBI agents I believe it's around page 84 of that trans of the transcript of that. So let me go back to the fact finding the problem is here um it sounds like you as a fact finding so we get to judge Wilson's well can't you infer it from the conduct uh at the time of this hearing we don't have any 11th circuit law on this enhancement that I could find is that correct? You have the JUC case judge. Is that on this? Yeah okay. Does it test that does it state the test about how it's got to be calculated etc? Uh JUC talks about the critical principle about how to determine the first requirement that claim motivation or subjective goals are irrelevant and what matters is what the activity was calculated to accomplish. But earlier in her argument we have a case where it's the the um the underlying crime is the same as this crime. I know we have a case on the enhancement but do we have a case where the underlying crime is this material support to a known organization who's engaged in known terrorists? Do you mean in do you mean Judge Hall do we have a case where you have a an arms trafficker selling to a uh terrorist organization something that's talking the same the same crime the 2339 she started off with it um but the underlying crime is is a 2339 DA1 crime. Correct there are there are there are uh a lot of decisions throughout the country on the 2339. On the 11th circuit. On the 11th circuit JUC is uh it is a 2339B. Okay thank you. Yes yes and uh in the course of the event. Mandhi is not I guess. Mandhi is not your honor no no uh and as a matter of fact in the course of the sentencing uh hearing and the filings by the by Ms. Davidi on behalf of the appellant before the sentencing hearing she was citing to a number of cases where she was trying to say that the defendant had not received the maximum sentence had not received the terrorism enhancement and a number of those cases came out of the 11th circuit. They were 2339B cases. The only difference was they preceded 2014 June 2014 and at that point the maximum sentence under 2339B was 15 years and not 20 years. It seems like what we're struggling here with is to decide whether the district judge made an inference or merely just assumed that the enhancement applies just because Ramirez provided guns to the ELN. How do we resolve that? How do we resolve that with the time that you have? My argument uh to the court uh and to you Judge Wilson on that score is that there's a well-known and long-standing canon of appellate construction uh that actually just was talked about uh last week in the uh in the Watkins case uh that when you're talking about things like a bench trial uh we can infer from the court's explicit factual findings and conclusions other implied factual findings that are consistent with its judgment although they are unstated. And that's been the rule in this circuit and in other circuits uh for probably from the existence of the 11th circuit or for a substantial period of time. Now what I would say to the court is what judge what the district court was presented with was first of all it's beyond dispute Arcila Ramirez the appellant knew he was selling arms that were intended for the ELN. Through his factual proffer plus the admitted exhibits and recorded conversations he discussed the sales for the organization. You have the coded conversations that were conceded at the sentencing hearing by uh appellant uh to be coded using uh things like the three letters to represent the ELN uh the B's and his own interview which I mentioned to Judge Hall earlier where he says of course they were going to the guerrillas. You know you're talking about being at the Venezuela border in places like Cucuta which is on the border between Colombia and Venezuela. Second you have the ELN undisputedly is a violent terrorist organization and you have the exhibit number 21 uh where the state department outlines just exactly what type of organization they are how they are dedicated to the overthrow their Marxist Leninist organization dedicated to the overthrow of the Colombian government and that describes their violent notorious history that talks about their attacks on police and their attacks as recently as 2018 during the time frame this case and after in 2019 when they blew up a Aren't you then making an argument that the court focused on the purpose of the ELN generally rather than Ramirez's intent? That's the key. Your honor let me let me just address that the two prongs of this are was uh and second was it one of the enumerated crimes? There's no question I don't think appellant can can get up and has not tried to get up and say that the second prong isn't met. The overall argument is about the first prong calculated to influence effect or retaliate against government. Appellant's counsel talked earlier about dictionary definitions. The dictionary definition of calculated simply is undertaken after careful estimation of the likely outcome and if you look at this case you go back to the fact that the appellant here isn't selling bread. He isn't hosting a website. He's selling guns. They are implements and instrumentality for one thing for violence. So when he's selling guns with regard to the guns am I right it was uh 45 uh AK-47s? I mean he's not just selling guns he's selling a lot of guns and and powerful automatic guns and a lot of magazines too right? Correct Judge Hall. As a matter of fact he was after he sold how many guns and what were they? Uh that is in government 22 Judge Hall. I don't have that number off the top of my head. Was it about 45 guns? But there were six in this particular count. I think four were handguns and two were uh AK-47s. Is that right? I believe all six Judge Rosenbaum were AK-47s. Okay. But I think 45 is probably ballpark estimate and then on top of that you had uh and it's in pictures I think it's government exhibits 17 and 18 at the sentencing hearing. He moved from selling complete guns and having to use straw purchasers to just going online and buying AR-15 uppers and lowers that could then be assembled in Colombia and using the same modus operandi smuggling them through the compressors that he cut open and then welded shut. Uh you had a veritable arsenal that you see in those pictures of uppers lowers of high capacity AR-15 weapons uh high capacity magazines. So you know it was not just a couple of guns it was a large amount of guns. All right, Mr. Gould, I think we have your argument. Thank you. Thank you, Judge. And Ms. Davidi, you have reserved some time for rebuttal. I have. Thank you. Um I believe that the government's argument centers again on the conduct of ELN. As I argued in the first half, the fact that they are a terrorist organization fulfills the elements of the crime that he pled to. The court is obligated through all of the case law and through the application notes and through to make specific findings as it relates to this specific defendant. What was his specific intent? The government would like you... But in that way, in an inference that kept it, I mean I guess what I'm asking is does the inference, if it's a reasonable inference, that selling these guns was intended to influence the government, does it have to be supported by anything other than what the judge said here? These are guns, they're violent instruments, of course they're intended to influence the government. Does that need to be supported by additional factual findings? Absolutely, Judge. Our position is in order for you to get any sort of enhancements, the court needs to make specific findings as it relates to this defendant. Now in this specific case, the court did not even go as far as your honor has described. It merely says, and we've quoted it in both our briefs, what it basically says is we know that it's a terrorist organization and basically says because it's a terrorist organization, there's a correlation and therefore he gets this enhancement. There's absolutely no discussion on the record as to the first prong of this enhancement. There's no discussion as to what this specific defendant did to corroborate, to do anything with the government. They merely, and I bring the court's attention to the fact that they must, under the definition A, establish that it's calculated to influence or affect the conduct of the government, and this has to be done by intimidation, coercion, or retaliation against the government conduct. It's important, Judge, and I think that that's the part of the argument that the court missed and that the government missed in their brief, that there is an and in between. There's a part A and there's a part B. Because he admits that he pled to part B, which is a charge that is specifically enumerated, that doesn't automatically find him guilty of part A, and I don't think the quantity of the drugs can assume that it was calculated to influence the government. Secondly, Judge, I believe that the amount of guns that were found, it's very clear from Mr. Arsila's statement that he sold to several different people, that he sold to not only on this occasion to the ELN, but he also sold to the guerrillas, he sold to drug dealers, he sold to a big group of different individuals. So therefore, the court cannot say ELN terrorists get the enhancement, and I don't believe the quantity of the drug, the quantity of the guns, which in this case, I would differ on the fact that there was that large of a quantity of drugs that were going to the ELN. Yes, there were six guns, which were clearly sent to the ELN, but that quantity of 46, or the number that the government has, is not a quantity that was specifically going to the ELN. That's a quantity that he is a broker. And if you read through the doing this to make money, they come back and say, yes, that's his motive. But they know there is no evidence at all that his actions were in any way consistent to do anything with the government. And I think that these implications, if they were made at all, which I don't believe they were, they were made in the judge's head, because there's no indication of them on the record. The record is completely void, unlike the extensive analysis that are in all of the cases that several courts have done on this same issue. This judge, in a hearing that lasted no more than an hour, hour and a half, and that includes introducing evidence, arguing for 3553s, arguing for a large array of things, including acceptance of responsibility, and then basically says on the record, I don't see the distinction. And he responds, and I think this is very interesting. His last words is, I don't believe that your objection is well-founding. I will overrule your objection. And then he says, I guess it is an objection, so I will overrule your objection, which goes back to the theory that he didn't quite understand the prongs, the analysis, and what he needed to comply with in order to give Mr. Arcila this extraordinary penalty. And based on that, Judge, we ask for one of two things, either for this court to determine that there is not enough evidence in the record that this enhancement applies to Mr. Arcila, and to send it back with instructions not to sentence Mr. Arcila with this specific enhancement, or in the alternative to send it back, to have the court reconsider it, and to consider the precise and long analysis that needs to be made to determine whether or not Mr. Arcila's, Ramirez's actions actually fall into being calculated, and whether they in any way influence the government, which we believe they did not. Well, thank you, Ms. Davidi, and I see that you were appointed by the court to represent Mr. Arcila Ramirez, and the case was well argued on both sides. The court thanks you for representing Mr. Ramirez. And thank you very much, and thank you for your time. Have a wonderful day. Thank you. Bye-bye.